Filed 9/13/13  T.P. v. Super. Ct. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| T.P.,<br><br>　　　　Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>RIVERSIDE COUNTY,<br><br>　　　　Respondent;<br><br>RIVERSIDE COUNTY DEPARTMENT<br>OF PUBLIC SOCIAL SERVICES,<br><br>　　　　Real Party in Interest. | E058904<br><br>(Super.Ct.No. RIJ1200260)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Tamara L. Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Petition denied.

David A. Goldstein for Petitioner.

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Real Party in Interest.

T.P. (father) seeks writ review of the decision of the juvenile court terminating reunification services and setting a hearing under Welfare and Institutions Code section 366.26,[1] as well as the denial of his petition for modification under section 388 regarding his child K.P. (the minor).

Father contends that the juvenile court abused its discretion by denying his request to set aside the initial jurisdictional and dispositional findings. Next, he contends that the Department of Public Social Services (department) failed to provide reasonable reunification services.

We conclude that neither challenge is well taken, and accordingly we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

When the minor was born in October 2011, she was addicted to methadone and suffered severe withdrawals. She was hospitalized for the first four months of her life and was discharged on February 20, 2012. A referral was made to the department during this time because the reporting party expressed concern about mother's ability to care for the minor because of her history of heroin use. It was also reported that father seemed to have poor impulse control and was unable to visit the minor in the hospital after being involved in a scuffle with hospital security.

The department received a second referral after the minor's release from the hospital also based on mother's drug use and father's violent anger issues. While this

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

referral was being investigated, a third referral was received concerning a mutual domestic violence incident between the parents. A deputy sheriff reported that an argument had escalated into a physical altercation, and that mother was holding the minor when this occurred.

During the investigation, it was discovered that the parents had a history of domestic violence, and that father had been previously arrested for infliction of corporal injury on a spouse. The minor was placed in protective custody at this time and dependency proceedings were instituted.

Both parents were present in court for the detention hearing on March 15, 2012. Counsel was appointed for father. The minor was detained and a jurisdiction/disposition hearing was calendared for April 6, 2012. The court sustained jurisdiction and ordered reunification services be provided the parents.

Father's case plan required him to participate in and complete a domestic violence program and general counseling. In June 2012, father enrolled in "ADV's domestic violence program," which included anger management groups and individual counseling. In July, father's individual therapist recommended that the father undergo a psychological evaluation because she felt he might suffer from a thought disorder. However, father rescinded his consent for release of any information to the department and in August he terminated individual counseling, stating that it was a ploy by the government to get information to hold against him. The group counselor reported that during his time there, father behaved well and participated in the discussions.

Father later indicated he wanted to re-enroll in the ADV program and said he would pay for it himself because it was no longer a county contracted service provider. The social worker was uncertain whether he ever contacted the group counselor or not. The department made a new referral for father to Catholic Charities, which reported that it was unable to contact him at the telephone numbers provided. Again, the social worker was unaware whether father participated in services with Catholic Charities since the latter would not speak with the department unless father consented to a release of information. "[Father] has made it clear that his services are none of the department's business and he will not share any information with us."

In September, the juvenile court ordered father to undergo a psychological evaluation to be conducted by Dr. Edward Ryan. Dr. Ryan informed the department that he had spoken to father who was adamant that, "He ain't seeing nobody." Father subsequently told the social worker that he would not undergo a psychological evaluation because he considered it illegal.

Although the department recommended terminating services, the juvenile court ordered a second six-month period of reunification on November 15, 2012. The court ordered father to undergo a psychological evaluation by Dr. Michael Kania. The court also heard and denied three petitions for modification filed by father and one by paternal grandmother.

At a special interim hearing on December 20, 2012, the court granted father a continuance to complete the psychological evaluation. It also authorized the minor to be

placed in paternal grandmother's home for an extended visit while certification of her home was made. Father was allowed to reside in his mother's home during this time.

The department filed an ex parte petition to change the court order, requesting the removal of the minor from paternal grandmother's home. On the date of the ex parte hearing, January 14, 2013, father had absconded with the minor. The court issued a bench warrant and a protective custody warrant for the minor. The court contacted father by phone and ordered him to appear in court. He did so, and the court terminated the extended visit with paternal grandmother and detained the minor.

Thereafter, he stopped visiting the minor in March 2013. The social worker testified that father did not complete anything in his case plan.

Regarding the psychological evaluation, Dr. Kania reported that he was unable to complete it due to father's resistance. The doctor stated that he ultimately persuaded father to come in for an evaluation, but the session was difficult and lengthy due to father's "very oppositional personality." They scheduled another meeting to complete the evaluation, but father did not appear. Dr. Kania called and spoke with father's mother on two occasions; father never returned the calls, and he failed to appear for another appointment scheduled by the social worker. Dr. Kania concluded that based on his experience with father, he believed that the latter may very well be "unsupervisable."

At a hearing on January 29, 2013, the court directed father to complete the evaluation with Dr. Kania. Father refused to do so. The social worker stated in the status review report of April 8, 2013, that father told him that Dr. Kania was biased and a friend

5

of the judge. Father reiterated his position that his services were none of the social worker's business and he then refused to answer any questions.

At the contested 12-month review hearing, father testified that the reason he did not follow through with Dr. Kania to finish the evaluation was his belief that the latter was "under-qualified as I just talked to him for three hours and he wasn't efficient." Father indicated that he would complete an evaluation only if certain conditions were met: the evaluator was not a friend of the judge; is not contracted by the department or the courts; and it is audio recorded.

Regarding reunification, father testified that it meant that he and mother would reunify with the minor, but he complained that the department had somehow twisted the definition of reunification. He maintained that he was able to provide care for the minor in any case. He believed that the individual therapist was not qualified. He indicated he had not enrolled himself in any individual counseling since November 2012, because there was no contract to do so.[2] As for reenrolling in an anger management program, father saw no need for it. Asked whether he would complete the domestic violence program if the court were to grant additional services, father replied, "On very certain circumstances because it's not reasonable. They wasted my time for over a year now."

At the conclusion of the hearing, the court continued the minor as a dependent child and terminated services. It indicated that had father done what the court had ordered him to do, the result might well have been different. Although father had almost

_____

[2] It is unclear whether father was referring to the fact that ADV was no longer a contract provider or that he has refused to sign a case plan.

6

completed anger management and individual counseling, he refused to cooperate to complete a psychological evaluation. The court had no doubt that father was good with the minor, but was concerned at the anger and hostility that father continued to express. The court advised father that to return the minor "to that type of atmosphere without benefitting from series that we give to you is absolutely detrimental and not in the best interest of this child."

Also at this time, the court ruled on father's section 388 petition. This petition sought to terminate jurisdiction and to return the minor to father's care or to set aside the jurisdictional and dispositional findings based on his assertion that he was never advised on the record of his constitutional rights by either the court or his attorney. (See Cal. Rules of Court, rule 5.534(k).) He also claimed he was deprived of the effective assistance of counsel at the combined jurisdiction and disposition hearing on April 6, 2012. His attorney at the time waived the reading and advisement of rights at the detention hearing. At the combined hearing, his counsel offered no affirmative evidence on the issue of jurisdiction, and submitted on the issue of disposition. In support of his petition, father declared that he informed his attorney prior to the hearing that he had evidence to prove the allegations against him were false, but she ignored him. He averred that no one told him he had a right to testify on his own behalf, confront the allegations against him, or that he could question the person making those accusations, and also subpoena witnesses.

The court denied the petition, finding that father presented no evidence of changed circumstances or that the best interest of the minor would be served. "Just because

somebody is acting right in a visit and the visits are appropriate, that doesn't mean it's in the best interest of the minor child." It added that contrary to father's claim, there was no evidence that the foster parent had abused the minor. Father was claiming he had not been informed of his constitutional rights, but the court noted that his attorney had waived the reading and advisement of rights at the detention hearing, and father had not submitted any declaration from the attorney wherein she admits she failed to advise him of his constitutional rights. Further, father failed to show prejudice as a result. While he asserted he had evidence to show the allegations of jurisdiction were not true, he failed to specify what evidence he had. Thus, he failed to prove that the outcome of the jurisdictional hearing would have been more favorable, and the court denied the section 388 motion.

DISCUSSION

*I. Section 388 Petition.*

Section 388 allows a parent of a dependent child to petition the juvenile court to change, modify, or set aside any previous order of the juvenile court. To succeed on a section 388 petition, the parent "must establish that new evidence or changed circumstances exist so that the proposed change in the court's order would promote the best interests of the child." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 641-642.) To succeed on a section 388 petition, the parent must present new evidence or circumstances that justify modifying the prior order. The court may summarily deny the petition without a hearing if the petitioner fails to make a prima facie showing of both elements. (Cal. Rules of Court, rule 5.570(d); *In re Marcelo B., supra*, 209 Cal.App.4th at p. 642.)

8

"A 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations . . . is credited." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593, citing *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719, fn. 6.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review a juvenile court's summary denial of a section 388 petition for abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.) If the petition fails to make the required prima facie showing, summary denial of the petition without a hearing does not violate the petitioner's due process rights. (*Id.* at pp. 460-461.)

The trial court did not abuse its discretion in denying the section 388 petition, since father failed to make the necessary showing to satisfy either element of new evidence or best interest of the child. Father asserts he told counsel at the time of the combined jurisdictional/dispositional hearing that he had evidence to controvert the jurisdictional allegations but, as the trial court pointed out, he never specified in his section 388 petition what this evidence was.

With respect to the best interest of the child element, the petition alleged that the minor has suffered unbearable neglect and abuse while in the care of the department. The

9

juvenile court, however, found no evidence of abuse or neglect at the hands of foster parents.[3]

Father now argues that it would have been in the child's best interest to set aside the dispositional findings made in April 2012, since there was considerable evidence to demonstrate that there was not a substantial risk of physical or emotional harm if the child were to be placed back with him. Not so. There was evidence that he had anger issues that erupted in domestic violence. Even now, there are legitimate concerns that he may have underlying psychological problems that he has refused to address.

Father's section 388 petition is based on his claim of ineffective assistance of counsel because he was not allowed to present evidence at the combined jurisdictional/dispositional hearing. Further, he complains that he would have demanded a contested hearing if his counsel had advised him of his due process rights. In essence, he asserts his prior attorney deceived him into agreeing to reunification services.

When a section 388 petition is used to raise a claim of ineffective assistance of counsel, the petitioner is still required to make a prima facie showing of changed circumstances and best interests to be entitled to a hearing. (*In re Jackson W., supra,* 184 Cal.App.4th 247, 259, fn. 6.) Even assuming father received ineffective assistance of counsel and that ineffective assistance constitutes a change of circumstances or new evidence with the meaning of section 388, he did not make a prima facie showing that the

---

[3] Father claims that the caretaker neglected to have a severe diaper rash treated. The minor was subsequently diagnosed as suffering from eczema.

proposed modification—having the minor placed in his custody—would be in the child's best interest for the reasons discussed above. (*Id.*, at pp. 259-260.)

*II. Reunification Services.*

Father asserts that the department did not provide him with reasonable services. We disagree. The standard of review when a parent challenges the reasonableness of the reunification services provided or offered is whether substantial evidence supported the juvenile court's conclusion that such services were reasonable. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Substantial evidence is evidence that is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "All conflicts must be resolved in favor of the respondent and the reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court." (*In re Albert B.* (1989) 215 Cal.App.3d 361, 375.)

The juvenile court's order is supported by substantial evidence. Father finds fault with various aspects of the social worker's performance: failure to meet with him in November 2012; placing restrictions on his contact with the minor during the extended visit with paternal grandmother; failure to expand visitation; failure to contact father's attorney to discuss concerns; and failure to explain what family reunification entailed. We find this final complaint to be fatuous. With respect to his other criticisms, we note that while there may have been some deficiencies, services are rarely perfect. (*Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1159.) The social worker attempted to maintain regular contact with father since assignment to this case despite father's noncooperation. He also discussed father's behavior with his anger management

11

facilitator and with father himself. Father's attorneys were made well aware of concerns about his behavior through the review reports and court hearings.

Father's complaints about lack of visitation during this review period are unfounded. He had complete access to the minor when they were both living in paternal grandmother's home, although there was some confusion whether he could provide sole care for the minor during this time. The minor was removed from the paternal grandmother's home when the latter stopped communicating and cooperating with the department. After the removal, father did not request extended visitation during the most recent reunification period, nor did he identify other relatives who would be willing to supervise visits. Contrary to father's various other complaints, the department was not required to inform him of the minor's medical appointments. Also, it appears she has received adequate medical treatment.

Overall, it appears that the department provided adequate services. Domestic violence and anger management programs, as well as individual counseling were made available to father by the department. It was father's decision not to complete these programs because he apparently concluded they were unnecessary. Similarly, father refused to complete the psychological evaluation, because in his opinion it was not reasonable to require him to do so. It is abundantly clear that father's failure to reunify was not due to the inadequacy of services provided by the department, but by the fact that father set himself up as the final arbiter of what he reasonably should or should not be required to do. He was mistaken, and in persisting in this attitude, he sabotaged his efforts to reunify with his child.

12

## DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
J.

We concur:

HOLLENHORST
Acting P. J.

MILLER
J.