Filed 11/17/22  P. v. Johnson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JONATHAN JOHNSON,<br><br>      Defendant and Appellant. | A162177<br><br>(Alameda County<br> Super. Ct. No. 170674) |

In 2014, defendant Jonathan Johnson entered a no contest plea to second degree murder and admitted an enhancement allegation of personal use of a firearm.  In 2019, defendant petitioned for resentencing under former Penal Code section 1170.95 (now § 1172.6).[1]  After an evidentiary hearing, the trial court denied the petition, finding the prosecution proved beyond a reasonable doubt that defendant was not entitled to relief because he was the actual killer.

Defendant appeals from the order denying his petition, raising claims of evidentiary error.  He also contends the prosecution failed to present

---

[1] The Legislature renumbered Penal Code section 1170.95 as section 1172.6 without substantive change, effective June 30, 2022.  (Stats. 2022, ch. 58, § 10; *People v. Strong* (2022) 13 Cal.5th 698, 708, fn. 2 (*Strong*).)  Further undesignated statutory references are to the Penal Code.

sufficient admissible evidence to support a finding that he was the actual killer.

After the trial court denied defendant's petition, the Legislature amended the law governing evidentiary hearings.  (Stats. 2021, ch. 551, § 2; see *People v. Basler* (2022) 80 Cal.App.5th 46, 55–56 (*Basler*) [describing changes to former section 1170.95].)  The parties do not dispute that the new law applies retroactively to defendant's case and that the trial court here considered hearsay evidence—including the out-of-court statements of nontestifying coparticipants identifying defendant as the shooter—that would not be admissible under the new law.  We conclude the trial court's consideration of this hearsay evidence was prejudicial and, therefore, reverse the order denying the petition.  But we reject defendant's claim that, putting aside the nontestifying coparticipants' hearsay statements, the record lacks sufficient evidence as a matter of law to support a finding he was the actual killer.  Accordingly, we will remand the matter for the trial court to conduct another evidentiary hearing in accordance with the evidentiary standards of section 1172.6.

### FACTUAL AND PROCEDURAL BACKGROUND

*Underlying Murder Conviction*

<u>The Shooting</u>

On May 20, 2011, defendant, then 17 years old, and three other teenagers were walking around the Fruitvale neighborhood of Oakland looking for someone wearing a gold chain, so they could steal it.  The group spotted Antonio Torres wearing a gold chain; he was working as a gardener in the front yard of a residence.  Torres died from a gunshot wound.

2

<u>Defendant's Statements to the Police</u>

On August 29, 2011, defendant was interviewed by the police.[2]  He admitted he was present at the shooting of Torres.  He identified his companions that day as David Hall, James Allen, and Y.W.[3]  Defendant said Y.W. had a revolver, and the plan was that Y.W. would snatch the gold necklace.  Defendant told the police that Allen and Y.W. went through a gate to enter a yard and steal the victim's necklace while he and Hall remained outside the gate.  He said Allen snatched the chain and then the victim started coming after Y.W., who got stuck in the gate.  According to defendant, the victim was about to hit Y.W., but Y.W. "did something to him," and "[a]ll [defendant] heard was, 'pow, pow, pow.' "

<u>Police Report</u>

Oakland Police Sergeant Mike Gantt documented his investigation of the Torres shooting in a report dated October 13, 2011.  Gantt reported the following facts.

On May 24, 2011, Gantt received information that defendant told his ex-girlfriend he did the shooting.  On August 29, Gantt interviewed defendant at the police department.  Defendant said he used to hang out with Hall, Allen, Y.W., and "Gregory," but he did not hang out with that group

---

[2] The following is based on a transcript of the interview included in the appellate record; the transcription begins at some point after the interview started.  The appellate record also includes a police report (summarized below) that describes statements by defendant not reflected in the interview transcript.

[3] At the time, Hall was 19 years old, and Allen and Y.W. were minors.  Allen later entered a plea of no contest to voluntary manslaughter for his part in the killing and was sentenced to 12 years in state prison.  Y.W. was found guilty of murder in juvenile court and committed to the Department of Juvenile Justice.

anymore because they " 'rob houses and beat on people.' "  Defendant reported that, a few months earlier, he saw Hall, Allen and Y.W. running down the street and they told him "they just 'hit someone' for a gold chain on 34th Avenue."  Gantt showed defendant surveillance video taken on 34th Avenue the day Torres was killed.  Defendant identified the first male who ran by as Hall, followed by Allen, himself and, last, Y.W.  He said Y.W. had a gun.  Defendant "stated that he was like a lookout while [Allen] and [Y.W.] walked into the front yard" of the residence where Torres was shot. Defendant told Gantt that "a guy he knows as Gregory" said he drove by after the robbery and took the victim's iPod.  Defendant was taken into custody.

On September 7, 2011, Allen and Y.W. were arrested, and Gantt interviewed each of them early the next day.  Allen stated that, in May, he was with Y.W., defendant, and Hall at the Fruitvale BART station. Defendant had a black revolver and said they could rob somebody.  They saw the victim doing gardening; he was wearing a gold chain, and he had an iPhone and was wearing earplugs.  Allen told Gantt that defendant "asked, 'Y'all want to get him?' "  Defendant entered the yard first.  Allen walked up behind the victim and snatched the chain off his neck.  Allen reported that the victim "came at [defendant] with some bolt cutters and [defendant] shot him."

In a separate interview, Y.W. admitted he was with Allen, defendant, and Hall, and they robbed a Hispanic man.  Y.W. said the victim turned around and he had big scissors; defendant tried to run, but his jacket got caught in the gate, and defendant shot the victim.  Y.W. said defendant gave him the gun as they ran away and Y.W. threw it in some bushes.

On September 8, Hall was arrested, and Gantt interviewed him.  Hall told Gantt that, on the day of the shooting, he was walking with Allen,

4

defendant, and Y.W. Y.W. "said they wanted to rob a Mexican guy the[y] saw for his gold chain." Hall reported that he said no and started walking away. Seconds later, he heard gunshots. He said defendant had a revolver and told him the victim "was coming at him with some gardening tools and 'it was either him or me.'"

Charges and Preliminary Hearing

Defendant was charged with the murder of Torres (§ 187, subd. (a)) with the special circumstance allegation that Torres was killed in the commission of a robbery (§ 190.2, subd. (a)(17)(A)). It was further alleged that defendant personally used a firearm (§§ 12022.53, subd. (b); 12022.5, subd. (a)) and discharged a firearm (§ 12022.53, subd. (c)), causing great bodily injury and death (§§ 12022.53, subd. (d); 12022.7, subd. (a)).

At the preliminary hearing, coparticipant David Hall was the only witness. He testified that he made a deal with the District Attorney's Office to testify in exchange for probation and up to a year in county jail. Without the plea bargain, Hall understood he faced a charge of murder and a possible sentence of 25 years to life in prison.

Hall testified that, on May 20, 2011, Hall was with defendant, Allen, and Y.W.[4] Defendant had a revolver that day; he lifted his shirt up to show Hall the gun. Defendant was "talking about hitting a lick," which Hall understood to mean robbing someone. Allen and Y.W. also talked about robbing someone. The group took a bus to the Fruitvale BART station and walked toward East 34th Avenue. Allen said something about "looking for Mexicans with gold chains." Hall understood the plan was to take the gold chains to a pawn shop.

---

[4] Hall identified defendant as his friend, Allen as his brother, and Y.W. as someone who "just came with my brother."

5

Hall testified that, as the group walked on East 34th Avenue toward Foothill, he noticed a man working on his garden who had an iPod and a gold chain. Defendant pointed the man out. According to Hall, there was no discussion about what would happen; no one said who was going to take the chain or who would be the lookout. Allen, Y.W., and defendant all entered the front yard through a gate, and Hall remained on the sidewalk. Allen "went and snatched . . . the chain." Hall did not see the shooting, but he heard two or more gunshots and started running. Everyone ran, and they ended up at the house of a friend of Hall's a few blocks away. At the house, Allen showed Hall the gold chain, and defendant described what happened. Hall testified, "[Defendant] said his sweater got stuck, and the guy was going to throw a garden tool at him. [']So it was either him or me.[']" Hall testified defendant "said he had shot him or something like that."

On cross-examination, Hall testified he did not see defendant go in the gate; that was just what defendant told him later.[5] Hall testified the victim was facing the trees, and Allen grabbed the chain from behind, so it did not appear the victim knew that Allen was behind him. Hall did not see the victim turn around after Allen snatched the chain. He saw Allen run from the front yard through the gate, but he did not see Y.W. come out of the gate. Hall started running when he heard the gunshots, and he was ahead of his three companions. When they reached his friend's house, Hall did not see the gun, and he did not know what happened to it. Surveillance footage recorded

---

[5] On redirect, however, Hall testified he saw defendant "inside the fence" slightly more than an arm's length away from the victim.

near the crime scene showed the four teenagers running.[6]  Hall identified himself as the first person to run by, but he could not identify the order of the others.

Defense counsel stipulated that Torres died on May 20, 2011, of one or more gunshot wounds.  Defense counsel also noted in his argument that Torres was shot in the back.

Defendant was held to answer on the murder charge with the robbery felony-murder special circumstance and firearm enhancement allegations.

Plea and Sentence

In April 2014, the defendant reached a negotiated disposition and entered a plea of no contest to second degree murder and admitted personal use of a firearm under section 12022.5, subdivision (a).  Defense counsel stipulated to a factual basis for the plea based on the police report.  The trial court accepted defendant's plea and admission; the court found a factual basis for the plea citing the police report, documents in the file, and the preliminary hearing.

Pursuant to the plea agreement, defendant was sentenced to 19 years to life in prison (15 years to life for the murder conviction, plus four years for the firearm enhancement).

*Petition For Resentencing*

Petition and Briefing

In June 2019, defendant filed a petition for resentencing under former section 1170.95.  In October 2020, the trial court found defendant made a

---

[6] Hall testified that the surveillance video was taken around two blocks from where they saw the victim.  Other evidence shows the video was recorded perhaps a block's length or less from where Torres was killed.

7

prima facie case, and counsel agreed to scheduling the evidentiary hearing beyond the 60-day time limit.

The parties' briefing on the petition included extensive exhibits. Defendant submitted Hall's plea agreement, excerpts of defendant's August 2011 interview with the police, Hall's juvenile court records, Allen's juvenile court records, an aerial photograph of the crime scene neighborhood and still photographs of surveillance video taken near the shooting, and his own mental health and school records. The prosecution submitted Gantt's police report from October 2011, the preliminary hearing transcript, and the probation report prepared for defendant's sentencing. Defendant also submitted a declaration from his prior defense counsel, who represented defendant at the time he reached a plea agreement with the district attorney in April 2014.[7]

Evidentiary Hearing

At the hearing to determine whether defendant was entitled to relief, the prosecution had the burden to prove, beyond a reasonable doubt, that

---

[7] Defendant's prior defense counsel stated that, by defendant's admission that he acted as lookout in the robbery, he could have been convicted of first degree murder under a robbery felony murder theory as an aider and abettor and therefore faced a prison term of 25 years to life. (And defendant faced additional exposure if he were found guilty of the discharge of a firearm and robbery felony murder special circumstance allegations.) Originally, the district attorney offered a plea to first degree murder and a sentence of 25 years to life in exchange for dismissal of the enhancement allegations; prior defense counsel countered that defendant would plead to second degree murder and 15 years to life; the prosecutor "wanted something in between" and offered second degree murder plus a firearm enhancement for a prison term of 19 years to life. Prior defense counsel stated that he advised defendant to accept the offer because defendant would "obtain[] a sentence with a parole eligibility date 6 years sooner than what he was facing as an aider and abettor."

8

defendant was ineligible for resentencing because he was guilty of murder under current law.  (§ 1172.6, subd. (d)(3); see former § 1170.95, subd. (d)(3), added by Stats. 2018, ch. 1015, § 4.)

The evidentiary hearing was held February 4, 2021.  The parties agreed the court could decide the matter based on the exhibits attached to the briefing, with minor exceptions.[8]  In addition, the trial court noted it "reviewed the Court's own file, and in particular the thing that caught my attention was the sentencing transcript in Mr. Johnson's case from May 21st of 2014."

The prosecutor argued defendant was ineligible for resentencing because he was the actual killer.  He said the evidence showed "three fairly consistent stories" from Hall, Allen, and Y.W, who all "put the gun . . . in Mr. Johnson's hand," and "one barely inconsistent story."

Defense counsel argued there was insufficient evidence to establish defendant was the shooter beyond a reasonable doubt.  He stated Hall was untrustworthy because he was only willing to cooperate with the prosecution

---

[8] At the start of the hearing, the trial court stated its understanding was that the parties "agreed to submit . . . for the evidentiary showing in this hearing" "all exhibits that were attached to all of [the] briefing."  Defense counsel responded that there was no agreement the probation report could be considered, noting it contained details "that I'm not sure where they came from."  Defense counsel also stated that counsel had agreed the reference in the police report to "a rumor about what Mr. Johnson may have said to a girlfriend about this incident" was "not admissible and should not be considered by the Court."  The court said it would "set that aside," referring to the alleged statement defendant made to his ex-girlfriend.  The court also said it did not read the facts of the offense summarized in the probation report, as it had already read about the incident "in several other places."  The prosecutor objected to the declaration from prior defense counsel discussing the negotiation of the plea agreement.  He argued it was irrelevant, but the court found some relevance and admitted the declaration.

9

"in return for a very sweet agreement" under which he was convicted of being an accessory after the fact. He suggested Hall, Allen, and Y.W. may all have decided to tell the police defendant was the shooter (instead of Y.W. as defendant claimed) in retaliation for defendant identifying them to the police. Defense counsel also argued the surveillance video taken a block away from the shooting showed Y.W. was the last person running from the scene and it was "logical to assume from the account we are all given, that the last person to leave the yard through the gate was the shooter."

Trial Court Ruling

The trial court denied the petition, finding the prosecution proved beyond a reasonable doubt that defendant was the actual killer and, therefore, was not entitled to relief.

Explaining its decision, the court first observed, "there's four people who are involved in this crime; three give a story that's consistent when it comes to who the shooter is. One does not." It acknowledged defense counsel made good points about Hall's credibility issues, but it found "the impeachment as to Mr. Johnson is eve[n] stronger," citing defendant's shifting story to the police. The court found Hall's testimony credible and it credited Allen's and Y.W.'s statements to the police that defendant was the shooter.

The court also relied on defendant's change of plea and statement at sentencing. The court noted defendant "admitted the personal use of the firearm; and the only way that the firearm was used in this case, based on the evidence that I've seen, was to shoot and kill the victim." The court continued, "[W]hen Mr. Johnson [wa]s given the opportunity to speak to the victim's family [at sentencing], this is what he said: 'If I could go back in time, I would because I made a bad decision. There's not a day that goes by

10

that I'm not haunted by that fateful evening on May 20th. I would like the Court and the Torres family to know it was never my intentions to hurt anybody. I do not have a murderous heart. I hope and pray that the Torres family will be confident. I know it is never easy to cope with when a loved one is gone, especially sooner than expected. I pray that you guys will hold up and be strong. And I know it has been really emotional on both sides, and in that, we all tend to make mistakes, some greater than others, but it is important that we learn from them and do things better. And mistakes, they affect not only you, but I've learned it also affects the people around you. I made a big mistake, one that is going to haunt me for the rest of my life. I'm going to continue to better myself from this experience, and I hope one day the Torres family can forgive me.' "

The trial court explained, "[W]hen I read that statement to the family, I think it was very appropriate, very mature on Mr. Johnson's part, but it clearly was an acceptance of responsibility for the murder, in my view. It's not the statement someone would make who simply hung outside and whose only involvement was to alert the others that the police were coming if he saw them. That's the statement of a person who feels deeply and truly and sincerely sorry that he killed somebody, and it's consistent with his no contest plea to second-degree murder. It's consistent with his admission of personal use of a firearm in this event. It's consistent with the statements of the other three people. In short, it's consistent with almost all of the evidence in the case."

## DISCUSSION

Defendant contends (1) his plea was not an admission he was the actual killer, (2) the trial court erred in relying on hearsay contained in the police report and probation report, (3) the trial court's reliance on the

11

coparticipants' statements to police violated *Crawford*,[9] (4) the trial court denied defendant due process when it considered his statement at his sentencing hearing as evidence of guilt (when the parties had not referred to his statement in their arguments), and (5) there is insufficient admissible evidence in the record to support a finding that he was the actual killer.

A.    *Defendant's Admission of Use of a Firearm*

In his opening brief, defendant asserts his plea to second degree murder with a firearm-use enhancement was not an admission that he was the actual killer. We have no quarrel with the proposition that admitting firearm use within the meaning of section 12022.5, subdivision (a), is not tantamount to admitting that one is an actual killer. But it does not appear the trial court here treated defendant's plea as an admission that he was the actual killer. After stating that it relied on the accounts of Hall, Allen, and Y.W. that defendant was the shooter, the court referred to defendant's plea by observing, "[H]e admitted the personal use of the firearm; and the only way that the firearm was used in this case, based on the evidence that I've seen, was to shoot and kill the victim." We do not understand this to mean the court believed the plea established defendant admitted he was the actual killer.[10] Rather, we agree with the Attorney General that the trial court's

---

[9] *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

[10] If the trial court thought defendant previously admitted in court that he was the shooter, it undoubtedly would have led with that finding, but instead the court began by highlighting the fact that, among the four teenaged boys present at the shooting, *three* identified defendant as the shooter and only one (defendant) identified another person as the shooter. (The court stated, "So to hit what I would describe to you as the highlighted points, there's four people who are involved in this crime; three give a story that's consistent when it comes to who the shooter is. One does not.") Our conclusion that the trial court merely treated defendant's firearm-use admission as "some evidence" (and not a definitive admission that he was the

12

reasoning shows it considered the fact that defendant admitted a firearm-use enhancement as "simply some evidence" relevant to making its factual finding that defendant was the shooter.

Defendant raises a slightly different argument in his reply brief, claiming it was error for the trial court to consider his plea and firearm-use admission *at all* in deciding the petition. We do not address arguments raised for the first time in a reply brief, "absent a showing why the argument could not have been made earlier" (*People v. Newton* (2007) 155 Cal.App.4th 1000, 1005), and defendant has not made such a showing. In any event, he offers no authority for the proposition that in an evidentiary hearing to determine whether a petitioner is eligible for resentencing under section 1172.6, the trial court is prohibited from considering the fact the petitioner admitted an enhancement allegation in the underlying criminal case. We therefore reject defendant's first argument.

B.     *The Trial Court's Consideration of the Police and Probation Reports*

Defendant contends the trial court should not have considered hearsay evidence contained in the police report and probation report. The Attorney General argues the court's consideration of inadmissible hearsay evidence was harmless.

---

shooter) is further supported by the trial court's evidentiary ruling that defendant's prior counsel's declaration was relevant as it related to defendant's no contest plea and his admission of personal use of a firearm. (See fn. 7.) The declaration offered a reason defendant might have admitted to the firearm enhancement even if he did not use a firearm during the robbery because the sentence agreed to was still lower than what he faced if convicted of first degree felony murder as a (non-shooting) aider and abettor.

1.    Subsequent Change to the Petitioning Procedure

When the evidentiary hearing was held in this case, former section 1170.95, subdivision (d)(3) (former § 1170.95(d)(3)), allowed trial courts to consider "the record of conviction" in deciding whether a petitioner was entitled to relief under the statute.[11]  Regarding the procedural rules governing evidentiary hearings under former section 1170.95(d)(3), a Court of Appeal observed, " '[T]he Legislature gave the superior court *unfettered discretion* to consider 'evidence' without any restriction at the subdivision (d)(3) hearing to determine the petitioner's eligibility for resentencing." (*People v. Williams* (2020) 57 Cal.App.5th 652, 661, italics added [holding that, under former section 1170.95(d)(3), a trial court was permitted to consider hearsay evidence so long as there was substantial basis for believing the hearsay information was reliable].)

Effective January 1, 2022, however, Senate Bill No. 775 (2021-2022 Reg. Sess.) (S.B. 775) deleted reference to "the record of conviction," and the following language was added: "The admission of evidence in the hearing *shall be governed by the Evidence Code*, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."  (Former § 1170.95(d)(3), as amended by Stats. 2021, ch. 551, § 2, italics added.)

---

[11] From 2019 through 2021, former section 1170.95(d)(3) provided that, "[a]t the hearing to determine whether the petitioner is entitled to relief," the parties "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens."  (Former § 1170.95, subd. (d)(3), added by Stats. 2018, ch. 1015, § 4.)

14

The revisions to former section 1170.95 made by S.B. 775 apply retroactively to cases that are not yet final. (*Basler*, *supra*, 80 Cal.App.5th at p. 56.)

2. Forfeiture

The Attorney General does not dispute that the new law applies retroactively to defendant's case, which is not yet final. But he argues defendant forfeited any challenge to the trial court's use of hearsay evidence described in the police and probation reports because defense counsel failed to object at the evidentiary hearing. We will not deem defendant's contention forfeited, however, because the law on permissible evidence in an evidentiary hearing under section 1172.6 has changed since the evidentiary hearing in this case, and defense counsel could not have anticipated the change. (*People v. Black* (2007) 41 Cal.4th 799, 810 ["We long have applied the rule that although challenges to procedures or to the admission of evidence normally are forfeited unless timely raised in the trial court, 'this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change' "].)[12]

3. Prejudice

Defendant argues reversal and remand for a new evidentiary hearing is required because the trial court expressly relied on hearsay evidence that is now inadmissible (see § 1172.6, subd. (d)(3)). The Attorney General responds that any reliance by the trial court on inadmissible hearsay evidence— including Allen's and Y.W.'s statements to the police described in the police report—was harmless. The Attorney General argues there was

---

[12] Because we do not deem the issue forfeited, we need not consider defendant's argument that any failure to preserve the issue for appeal was the result of ineffective assistance of counsel.

15

overwhelming evidence that defendant was the actual killer, citing (1) Hall's preliminary hearing testimony that defendant showed him a gun before the robbery and defendant told him he shot the victim after the robbery; (2) defendant's admissions to the police that he and his companions discussed stealing a chain and that he acted as a lookout; and (3) defendant's statement of regret at sentencing, which the trial court described as "the statement of a person who feels deeply and truly and sincerely sorry that he killed somebody."

We generally review claims of evidentiary error under the *Watson* standard; thus, we ask whether it is reasonably probable the outcome would have been more favorable to the defendant absent the error. (*People v. Partida* (2005) 37 Cal.4th 428, 439, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) A reasonable probability "in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) It has been said that a reasonable probability is shown when an evidentiary error " 'undermines confidence in the outcome of the trial.' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 668.) Appellate review under *Watson* "focuses not on what a reasonable jury [or trial court acting as fact finder] *could* do, but what such a jury [or trial court] is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)

Here, before the court heard argument at the evidentiary hearing, and in the course of discussing the scope of the evidence that would be considered at the hearing, the trial court stated that, as to "the factual aspects of the offense," the items it had "relied on the most were" Hall's preliminary hearing testimony, Gantt's interview with defendant, and the police report summarizing what defendant, Hall, Allen, and Y.W. told the police. After hearing argument from the parties, and when the court announced its ruling, the first point it made was that four individuals were involved in the crime and *three* of them gave a consistent story about who the shooter was. The court recognized there were reasons to question Hall's credibility but found there was "stronger" "impeachment" as to defendant. In weighing the competing credibility of Hall and defendant, the court noted, "There is also the matter of both James Allen and [Y.W.], also indicating that Mr. Johnson is the shooter."

We conclude there is a reasonable chance, more than an abstract possibility, that the outcome would have been more favorable to defendant had the trial court not considered Allen's and Y.W.'s inadmissible hearsay statements. Unquestionably, the trial court relied on their statements in reaching its finding that defendant was the shooter. Without their statements, it was Hall's testimony against defendant's statements to law enforcement. No physical or other witness evidence placed the gun with defendant. The trial court noted defense counsel "ma[d]e some certainly good points about [Hall's] credibility issues," but it found defendant less credible because he lied to the police about his involvement in the robbery. That defendant initially lied to the police is certainly relevant to his credibility, but it does not necessarily show he was the shooter given that there were four individuals at the crime scene who could have been the shooter. And

17

defendant's apology at sentencing was not an express admission that he was the shooter and was viewed as inculpatory by the trial court in light of "the statements of the other *three* people." (Italics added.) On this record, we think it is reasonably probable that Allen's and Y.W.'s hearsay statements corroborating Hall's testimony and expressly identifying defendant as the shooter could have been the evidence that tipped the scale for the trial court to credit Hall's version of events over defendant's and thus determine that defendant was the shooter beyond a reasonable doubt. It merits a remand for the trial court to determine whether defendant is entitled to relief under section 1172.6 in a new evidentiary hearing.[13]

---

[13] The Attorney General also argues the trial court's consideration of hearsay evidence was harmless because there was overwhelming admissible evidence that defendant was guilty of murder as a major participant in the underlying robbery who acted with reckless indifference to human life. (See *Strong*, *supra*, 13 Cal.5th at p. 708 ["Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2' "].) We reject this argument because the Attorney General cannot now rely on a theory of murder liability the prosecution did not argue below, and we do not address it on the merits.

At the evidentiary hearing, defendant was entitled to resentencing unless the prosecution could prove to the trial court beyond a reasonable doubt that defendant is guilty of murder under current law. (§ 1172.6, subd. (d)(3); *Strong*, *supra*, 13 Cal.5th at p. 709.) The prosecution in this case never argued defendant was guilty of murder under the theory he was a major participant who acted with reckless indifference to human life, and the trial court did not find defendant guilty of murder under this theory. A determination by a reviewing court that there may be substantial evidence to support this theory of murder liability would not satisfy the statutory requirement of a finding of guilt beyond a reasonable doubt and, therefore, would not be sufficient to deny defendant's petition. (See *Strong*, at p. 720 ["a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing," and an

18

Accordingly, we reverse the order denying defendant's petition and remand for a new evidentiary hearing at which the parties may present evidence in accordance with section 1172.6.  (See *People v. Cooper* (2022) 77 Cal.App.5th 393, 418 [where the trial court erred in the evidentiary hearing on a petition under former section 1170.95, the appellate court concluded it was "appropriate to remand the matter for a new hearing on whether [the petitioner] is entitled to relief"].)

C.      *The Court's Consideration of Defendant's Sentencing Statement*

Defendant also argues the trial court demonstrated bias or appearance of bias by considering defendant's statement made at the sentencing hearing when the parties did not offer the statement as evidence or argue about its significance, and that the remedy for this alleged bias is remand to a different judge to conduct the new evidentiary hearing.  We disagree with defendant's claim that the trial court exhibited bias.  It does not appear to us that the court departed from its role as neutral factfinder.  The court did not "persist[] in making discourteous and disparaging remarks to a defendant's counsel" (*People v. Mahoney* (1927) 201 Cal. 618, 627) or make remarks that "give the appearance the court held preconceived ideas" that raise doubts about the fairness and impartiality of the proceeding" (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 455, disapproved of on another point by *People v. Freeman* (2010) 47 Cal.4th 993) as in the cases cited by defendant.  Instead, it

---

"after-the-fact" court review does "not involve a determination beyond a reasonable doubt"].)  Consequently, the Attorney General's claim for the first time on appeal that defendant *could* have been found guilty of murder under an unargued, alternative theory would not show harmlessness even if true.

appears the court conducted the hearing under the law that it believed was applicable at the time.[14]

D.    *Sufficiency of the Evidence*

Finally, defendant contends there is insufficient admissible evidence to support a finding he was the actual killer and, therefore, he is entitled to resentencing as a matter of law.

Defendant argues this court should conduct our review without giving deference to the trial court's credibility findings because the court relied on documentary evidence and not live testimony. This argument was rejected by the Fourth District Court of Appeal in *People v. Clements* (2022) 75 Cal.App.5th 276, 301. The *Clements* court reasoned that a ruling after an evidentiary hearing on a petition for resentencing is predominantly a factual determination, and where a determination is a question of fact, there is " 'no reason to withhold the deference generally afforded to such factual findings.' " (*Ibid.*, quoting *People v. Perez* (2018) 4 Cal.5th 1055, 1066.) Division Four of our court recently followed *Clements* in *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 232-233.) We agree with *Clements* and *Sifuentes* and reject defendant's argument. Accordingly, we review defendant's claim under a substantial evidence standard. (*Clements*, *supra*, 75 Cal.App.5th at p. 298 [reviewing trial court's ruling on a petition under former section 1170.95 by " ' "examin[ing] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt" ' "].)

---

[14] Because we are reversing the court's order, we need not consider defendant's *Crawford*/Sixth Amendment and due process claims.

In this case, defendant does not dispute that Hall's preliminary hearing testimony is admissible evidence. Nor does he challenge the trial court's consideration of his own statements to the police as reflected in the interview transcript he submitted in support of his petition. Defendant's statements show he was with Hall, Allen, and Y.W. on the day of the killing and their plan was to steal a gold necklace. Hall's testimony supports findings that defendant had a gun earlier that day, that he talked about robbing someone, and that he entered the front yard and was near the victim before the shooting. Hall's testimony further establishes that defendant admitted he shot Torres soon after the killing. This is substantial evidence supporting a determination defendant was the actual killer. On remand, however, it will be up to the prosecution to prove beyond a reasonable doubt that defendant is not entitled to relief under section 1172.6.

## DISPOSITION

The order of February 4, 2021, denying defendant's petition for resentencing under former section 1170.95 is reversed. The matter is remanded for the trial court to conduct a new evidentiary hearing in accordance with section 1172.6.

                                                _____
                                                Miller, J.


WE CONCUR:


_____
Stewart, Acting P.J.


_____
Van Aken, J.*


A162177, *People v. Johnson*

---

  * Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.