Filed 9/21/23  P. v. Diaz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D081359 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD251546) |
| STEVEN MICHAEL DIAZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lisa R. Rodriguez, Judge.  Affirmed in part, sentence vacated, and remanded for resentencing.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winter, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

In 2014, a jury convicted Defendant Steven Michael Diaz of a series of seven robberies that he committed at the age of 25.  At sentencing, the court denied Diaz's motion to dismiss a prior strike despite noting the unfortunate circumstances of his childhood.  It selected the upper prison term on the principal count and consecutive one-third the middle terms on the remaining counts, all of which were doubled as a result of the strike.  The court also imposed a mandatory five year prior serious felony enhancement (nickel prior) and two one-year prison prior enhancements.  Diaz received a total prison term of 29 years.

Half a dozen years later, the Legislature overhauled the determinate sentencing law (DSL) by passing an array of amendments that became effective on January 1, 2022.  Based on those amendments, the Department of Corrections and Rehabilitation (CDCR) recommended that the court resentence Diaz.

With a different judge now presiding, the court responded to the CDCR recommendation by recalling the sentence based on the invalidity of the prison priors.  Taking into account Diaz's extensive rehabilitation efforts since his conviction, it struck the nickel prior.  It nonetheless chose the upper prison term on count 1, imposed consecutive one-third of the middle terms on counts 2 through 7, and declined to dismiss the strike.

Diaz's appeal focuses on the court's decision to impose the upper prison term on count 1.  He argues we must remand for resentencing because his counsel was constitutionally ineffective for failing to raise, and the court prejudicially erred in failing to consider, the mitigating circumstance of youth set forth in Penal Code[1] section 1170, subdivision (b)(6)(B) and California

---

[1]    Further undesignated statutory references are to the Penal Code.

Rules of Court,[2] Rule 4.423(b)(6). Diaz additionally contends he received ineffective assistance of counsel because his lawyer failed to inform the resentencing court of the original sentencing judge's impressions regarding the connection between his childhood trauma and the crimes of which he was convicted. We agree that Diaz's resentencing counsel performed deficiently, and the deficient performance was prejudicial. We remand for a full resentencing based on the court's informed discretion.

FACTUAL AND PROCEDURAL BACKGROUND

Diaz was convicted on seven counts of robbery (§ 211) after a 2014 trial before Judge Charles G. Rogers. He committed the robberies in September and October of 2013 when he was 25 years old.

A.    *Initial Sentencing*

Prior to sentencing, Diaz brought a motion to dismiss his prior strike under former section 1385, subdivision (a) and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). The Probation Department prepared a presentence report that did not identify any mitigating circumstances. But in describing Diaz's family relationship, the report noted: "Both parents were not present during his life as they were in and out of jail and were involved in criminal lifestyles. He admitted his mother abused drugs and was 'running the streets' while his father was actively involved in selling illegal substances in Mexico."

At the sentencing hearing, Judge Rogers first found that Diaz had two prison priors. The court then heard from Diaz's aunt, who explained his

_____

[2]    Further undesignated rule references are to the California Rules of Court.

difficult upbringing, with his mother frequently "in trouble" and not there for him when he needed her.

Considering the factors set forth in *People v. Williams* (1998) 17 Cal.4th 148, 162–163, Judge Rogers denied the *Romero* motion due to: (1) Diaz's extensive criminal history and prior opportunities to reform, and (2) the extreme nature and circumstances of the current offenses, including Diaz's anger and aggression and the victims' resulting terror during the incidents. He did so despite specifically acknowledging that Diaz's difficult childhood played a role in his commission of the seven robberies:

> "And it seems to me that it is undoubtedly true that the unfortunate circumstances in which he grew up played a part in creating the anger and the rage that we saw him express seven times in this case.
>
> "And it may be that his mother's conduct was a significant part of this... There is certainly great anger on the part of this young man. And it seems almost beyond question that his family circumstances, ... his mother certainly and perhaps his father, this young man did not have a very good environment to grow up ... ."

Judge Rogers sentenced Diaz to 29 years in prison, consisting of: (1) a five-year upper term on count 1, doubled for the strike; (2), consecutive one-year terms (one-third of the middle term) on the remaining six counts, doubled for the strike; (3) a five-year "nickel prior" serious felony enhancement (§ 667, subd. (a)); and (4) one year each for the two prison priors (§ 667.5, former subd. (b)). The judge chose the upper term on the principal robbery count because Diaz's conduct "was completely domineering and threatening," and because "most, if not all, of [the victims] were thoroughly terrorized."

On appeal, we affirmed the judgment. (*People v. Diaz* (Aug. 28, 2015, No. D066621) [nonpub. opn.].)

4

B.    *Resentencing*

On July 13, 2022, after amendments to the DSL took effect, CDCR sent a letter to the court recommending resentencing of Diaz under section 1172.1. It recommended that the court exercise its discretion to strike the five-year serious felony enhancement under section 667, subdivision (a)(1) based on section 1385, subdivision (c).

Diaz brought a motion for resentencing, requesting that the court dismiss the strike and the nickel prior. In support, he pointed to section 1385, subdivisions (c)(2)(B) (multiple enhancements), (c)(2)(C) (enhancements resulting in a sentence over 20 years), and (c)(2)(E) (current offense linked to childhood trauma). Diaz urged the court to impose a nine-year prison term, consisting of the three-year middle term on count 1 and one year for each of counts 2 through 7. His sentencing brief did not cite to section 1170 to support application of the middle term.

Diaz asked the court to consider his rehabilitation efforts in custody (§§ 1172.1 & 1172.75), which included earning a GED, enrolling in college, and completing rehabilitation, self-help, and vocational training programs. He attached several letters from CDCR employees who personally witnessed Diaz's conduct and character as an inmate in recent years, and who endorsed Diaz's rehabilitation efforts and success. He requested that the court consider his supportive family, as evidenced by the 533 visits from 12 relatives he received while in custody, as well as the commitment by family members to house and employ Diaz. He also noted that he had paid court-ordered restitution in full.

The People opposed CDCR's recommendation and Diaz's motion, arguing that the dismissal of the nickel prior enhancement would pose an

"unreasonable risk of danger to public safety" under section 1172.1, subdivision (b)(2).

The parties appeared before Judge Rodriguez in November 2022. Defense counsel maintained that Diaz could not be shown to be a risk to public safety by clear and convincing evidence, noting his rehabilitation efforts, the letters from CDCR employees, and his supportive family. She referenced the section 1385 mitigating circumstances but did not mention section 1170. The prosecutor did not oppose striking the prison priors, which were no longer valid, but objected to striking the strike and the nickel prior.

Judge Rodriguez noted that the invalidity of the prison priors under section 1172.75 required resentencing, and she recalled the sentence. She explained that she had reviewed the CDCR letter, the parties' papers, the original probation report, a Statement in Aggravation from 2015, a Statement in Mitigation from 2014, the appellate opinion affirming the judgment, Diaz's and his families' letters, and the C-file. Based on this information, she recounted Diaz's criminal history and each of the seven robberies. The judge then stated that, since his incarceration, Diaz "has dedicated himself to rehabilitation for no other reason than to change his own life when he gets out, as well as that of his family" without knowing he would later be resentenced. She concluded that Diaz "is a reduced risk for violence," noting his involvement in educational, self-help, and substance recovery programs; his serious liver disease; his strong familial support evidenced by the unusually large number of family visits; the laudatory CDCR letters; his "impressive" letter of remorse in which he took responsibility for his actions; his "solid" plans for his future; his full payment of restitution; and his single rule violation and single instance of disobeying an order during his nine years of incarceration. Judge Rodriguez nonetheless denied the motion to strike

the strike prior because of Diaz's extensive criminal history and the "reign of terror" causing suffering in each of the seven victims of the robberies.

Proceeding to resentence Diaz, Judge Rodriguez chose the upper five-year prison term for count one, doubled for the strike, finding that there were *no* preconviction mitigating factors:

> "The Court is choosing the upper term finding that there are no mitigants; that aggravants -- well, there is mitigants now in the defendant's conduct subsequent to this, but I believe I'm going to address that with respect to the nickel prior. And the aggravants outweigh that, given the criminal history, the poor performance on probation, and the aggravant was proven beyond a reasonable doubt."

As to counts 2 through 7, the judge sentenced Diaz to consecutive one-year terms for each count, doubled for the strike. The court then struck the two prison priors as invalid under section 1172.75.

Finally, Judge Rodriguez decided to strike the nickel prior. She declined to apply section 1385, subdivision (c)(2)(E), finding that there was "insufficient evidence to suggest that the crimes were committed because of any childhood trauma. Not that Mr. Diaz has not sustained childhood trauma, but just that the commission of the crimes don't seem to be connected to that." But the judge found that section 1385, subdivision (c)(2)(C) applied because the enhancement would result in a sentence over 20 years, and its dismissal would not endanger public safety:

> "Mr. Diaz has taken every step to address his violence, his addiction, his lifestyle. He's made positive strides in his life not to get a reduced sentence, but to truly improve himself and that cannot be disregarded. This Court cannot find that dismissal of the enhancement would endanger public safety by resulting in physical injury or serious danger to others. Thus, pursuant to Penal Code Section 1385, the

7

serious felony -- that's pursuant to Penal Code Section 667(a). That felony prior is stricken."

The court thus sentenced Diaz to an aggregate prison term of 22 years, composed of the upper five-year term on count 1 and consecutive one-year terms (one-third the three-year middle term) on counts 2 through 7, with all terms doubled for the strike. Having reimposed a sentence, Judge Rodriguez addressed Diaz one final time:

> "Mr. Diaz, I want to make sure that you understand and appreciate this Court really applauds you for the efforts that you have undertaken. I know that you were hopeful that the Court would be striking the strike as well. But in consideration of everything, I have to -- there has to be consequences for the conduct, and this was seven separate robberies.
>
> "But because of your excellent work in prison, I am dismissing that nickel prior and with the two prison priors. Your sentence goes from 29 years to 22 years."

The judge asked defense counsel if she sought to be heard further, and counsel declined.

## DISCUSSION

In resentencing Diaz, the court made three key decisions affecting the prison term it ultimately imposed. It (1) granted Diaz's motion to strike the serious felony "nickel" prior, (2) denied his *Romero* motion[3] to strike the strike prior, and (3) elected to impose the upper term on count 1 rather than the lower or middle term. Naturally, Diaz does not complain about the first, a ruling in his favor. He likewise has chosen not to challenge the second, a discretionary decision in which the court must find "extraordinary" circumstances to grant the motion. (See *People v. Carmony* (2004) 33 Cal.4th

---

[3]    See generally *Romero, supra,* (1996) 13 Cal.4th 497.

8

367, 378.) Instead, he focuses on the third—the decision to impose the upper term.

Selecting the upper prison term on the principal count, the trial court found there were "no mitigants" apart from "defendant's conduct subsequent to [his conviction]," i.e., his commendable behavior in prison. It noted that the aggravating factors involving Diaz's "criminal history" and "poor performance on probation" outweighed any postconviction mitigating circumstances. Later, in the context of addressing the nickel prior, the court expressly rejected Diaz's childhood trauma as a mitigating factor, finding that although he experienced trauma as a child, "the commission of the crimes don't seem to be connected to that."

When the court expressed the view that there were "no mitigants" before Diaz's efforts at self-improvement in prison, defense counsel never argued that Diaz was undisputedly under 26 years of age at the time of the commission of the crimes. (See Rule 4.423(b)(6)[4].) Neither did she point out, in response to Judge Rodriguez's statement that Diaz's childhood trauma was unconnected to the crimes, that the original sentencing judge (Judge Rogers) had expressed the opposite view. (See Rule 4.423(b)(3)[5].)

Focusing on these two omissions, Diaz asserts he was denied constitutionally effective assistance of trial counsel at his resentencing hearing. (See generally *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).) Although "a reviewing court defers to counsel's reasonable

---

[4]    Rule 4.423(b)(6) identifies as a mitigating factor that defendant was "under 26 years of age at the time of the commission of the offense."

[5]    Rule 4.423(b)(3) specifies as a mitigating factor that "[t]he defendant experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence and it was a factor in the commission of the crime."

tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance," counsel's performance is deficient if "the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission" or if "there simply could be no satisfactory explanation." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) Counsel's failure "to raise 'a significant and obvious issue,' ... will generally be considered deficient performance under *Strickland* ... ." (*In re Hampton* (2020) 48 Cal.App.5th 463, 477.)

Diaz argues there could be no legitimate tactical reason for counsel to omit reference to his youth at the time of the crime, which the court was required to consider as a mitigating factor. And while he concedes that "reasonable minds could differ" as to whether Judge Rogers comments amounted to a necessary finding that bound Judge Rodriguez, he asserts that counsel was obligated at a minimum to make Judge Rodriguez aware of Judge Rogers's views and urge that she defer to the judge who heard all the evidence presented at trial.

A.    *Recent legislative changes have circumscribed the trial court's discretion in selecting the appropriate prison term.*

Critical to our analysis of Diaz's arguments are several recent statutory amendments. When he was originally sentenced in 2014, the DSL furnished the trial court with broad discretion to "select the term which ... best serves the interests of justice" when the relevant statute provided three possible prison terms. (§ 1170, former subd. (b)(5).) The Legislature has since enacted Senate Bill No. 567, which created a presumptive middle prison term sentence and limited the circumstances in which courts may impose an upper term sentence. (See Sen. Bill No. 567 (2020–2021 Reg. Sess.); Stats. 2021, ch. 731, § 1.3.) Effective January 1, 2022, under section 1170, subdivision

10

(b)(1), a court must "order imposition of a sentence not to exceed the middle term" except under the narrow circumstances provided by section 1170, subdivision (b)(2). Courts may impose an upper term sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[6] (§ 1170, subd. (b)(2).) The Fifth Appellate District recently summarized the effect of the amendments in limiting the sentencing court's discretion:

> "[A] court may not simply select an upper term because it appears justified by aggravating circumstances; rather, it is that a court, *bound not to exceed the middle term*, may conclude this presumptive rule is overcome "only when" [citation] there are aggravating circumstances to justify upward departure from it. ... In distinct contrast with the former sentencing scheme, the court's decision to impose an upper term is now expressly framed around whether circumstances justify departing from the rule that the middle term is the default maximum sentence." (*People v. Falcon* (June 26, 2023, F083577) 92 Cal.App.5th 911, review granted Sept. 13, 2023, S281242.)

This discretion was further limited that same year by Assembly Bill No. 124. (Stats. 2021, ch. 695 (2020–2021 Reg. Sess.) § 5.) It amended section 1170 to provide that "[n]otwithstanding paragraph (1)," imposition of

---

[6] The authors of Senate Bill No. 567 explained the purpose of these amendments as follows: "Given the prevalence of this [determinate] sentencing structure and the studies that show that long sentences do not deter people from committing crime and are counter-productive to rehabilitating people and bringing them back to the fold of our society, we need to ensure that the harshest sentences receive the greatest scrutiny and justification before they are meted out." (Assem. Floor Analysis com., 3d reading analysis of Sen. Bill No. 567, as amended July 1, 2021, p. 2.)

a *lower* prison term sentence was mandated if any of the enumerated circumstances "was a contributing factor in the commission of the offense," except if "the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) The mitigating circumstances that generally require imposition of the lower term include childhood trauma (§ 1170, subd. (b)(6)(A)) and youth, as defined by section 1016.7, subdivision (b) (§ 1170, subd. (b)(6)(B)).[7] Corresponding to these statutory changes, the list of mitigating circumstances in Rule 4.423 was amended effective March 14, 2022, to include childhood trauma that was a factor in the commission of the crime (Rule 4.423(b)(3)) and the defendant being under 26 years old at the time of the commission of the crime (*id.,* 4.423(b)(6)).

B.    *The court should have been advised that Diaz's age was a mitigating factor it was required to consider in selecting the appropriate prison term.*

Diaz argues that the court was required to consider his age at the time of the crime as a mitigating factor. Indeed, his youth created a statutory presumption that the court should select the lower term of imprisonment rather than the middle or upper term. Moreover, as Diaz points out, the court's statement that there were "no mitigants" other than his postconviction behavior in prison demonstrates that it did *not* consider his age as a mitigating factor. The People assert that he forfeited the argument by his counsel's failure to raise it at the sentencing hearing. (See *People v.*

---

7    Section 1016.7, subdivision (b) defines youth as "any person under 26 years of age on the date the offense was committed." (Stats. 2021, ch. 695, § 4, adding Pen. Code, § 1016.7.)

*Scott* (1994) 9 Cal.4th 331, 351–354.)  Diaz responds that if the argument was forfeited, he was denied effective assistance of counsel.[8]

We agree that there could be no conceivable tactical reason for defense counsel to refrain from mentioning Diaz's age as a mitigating factor. Compounding this error is the fact that section 1170 makes the lower term the presumptively appropriate prison sentence for defendants who were under 26 years of age when the crime was committed.  (*Id.*, subd. (b)(6)(B).) Had counsel advised the court of Diaz's status as a youthful offender, the court before sentencing him to the upper term should have explained why the presumption was overcome and why age as a mitigating factor did not at least warrant the middle rather than upper prison term.

C.     *The court should have been advised of Judge Rogers's statement that Diaz's childhood trauma was a factor in the commission of his crimes.*

Diaz next argues his counsel was constitutionally ineffective for failing to mention Judge Rogers's prior comment that Diaz's childhood trauma contributed to the commission of the offenses and for failing to then argue that the trial judge's statement should carry substantial weight.  Here too, there could be no conceivable tactical reason for defense counsel's failure to make a childhood trauma argument in the section 1170, subdivision (b)(6)(A) context, supported with Judge Rogers's statement that Diaz's "unfortunate" childhood trauma "undoubtedly ... played a part" in these seven robberies.[9] Counsel should have highlighted the certainty of Judge Rogers's belief that

---

[8]     The People do not attempt to defend the quality of the representation Diaz received at the sentencing hearing.

[9]     Diaz further argues that collateral estoppel requires the resentencing court to accept as binding Judge Rogers's statement that childhood trauma factored into the commission of his crimes.  We express no opinion on that issue, leaving it to the superior court to address should that become necessary.

childhood trauma *was* a contributing factor in the commission of the crimes after hearing the evidence at trial on the crimes. As with the youth mitigating factor, had the childhood trauma argument been successful, it would have created a statutory lower prison term presumption.

D.     *Counsel's failures cannot be deemed harmless.*

Counsel's deficient performance causes prejudice when there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland*, *supra*, 466 U.S. at pp. 687–688, 694.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.) Courts have defined " 'probability' " to mean "merely a *reasonable chance*, more than an *abstract possibility*" of a different result absent counsel's deficient assistance. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) The chance need not be more likely than not. (*Ibid*.)

Deficient performance that results in " 'unaware[ness by the court] of the scope of its discretionary powers' " or " 'misinformation regarding a material aspect of a defendant's record' " prevents " 'the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*), citing *People v. Belmontes* (1983) 34 Cal.3d, 335, 348, fn. 8.) When the court imposes a sentence in the absence of informed discretion, even if that sentence was lawful under the amended section 1170, subdivision (b), *Gutierrez* "directs us to remand for resentencing unless the record clearly indicates that the trial court would have imposed the same sentence under the new law." (*People v. Lewis* (2023) 88 Cal.App.5th 1125, 1137, review granted May 17, 2023, S279147.)

The People suggest that any error by defense counsel cannot be deemed prejudicial because the court is presumed to be familiar with the record and

must have considered Diaz's youth, but nonetheless determined that the upper prison term was appropriate. The argument, however, is inconsistent with the court's express determination that there were "no mitigants." Had the court been aware of Diaz's age at the time of the offenses, it would have been obligated by Rule 4.423(b)(6) to find the existence of at least one mitigating factor and to evaluate it on the record in reaching a decision. The court would have then considered whether Diaz's youth contributed to his commission of the offenses, and, if so, whether the circumstances nonetheless justified departing from the presumptive lower term under section 1170, subdivision (b)(6)(B).[10] The DSL requires that the court "set forth on the record the facts and reasons for choosing the sentence imposed." (§ 1170, subd. (b)(5).)

The record gives no indication that Judge Rodriguez considered youth as a mitigating factor or that she would have imposed the upper prison term had she considered Rule 4.423(b)(6) and section 1170, subdivision (b)(6)(B). This requires remand under *Gutierrez.* (See *People v. Ochoa* (2020) 53 Cal.App.5th 841, 853 ["when, as here, the record is at the very least ambiguous as to whether the court understood its obligation to consider youth-related mitigating factors at sentencing before making the discretionary sentencing decision, ... remand is appropriate"].)

Indeed, the record affirmatively suggests a reasonable probability the court would *not* have imposed the upper prison term after considering age as a mitigating factor. Judge Rodriguez recognized and commended Diaz's improvement over time through his extensive rehabilitation efforts in the years since the commission of these offenses. She noted the "positive strides"

---

[10]    Judge Rogers's comments at the original sentencing provide support for believing that Diaz's youth was a "contributing factor" in the commission of the crimes. (§ 1170, subd. (b)(6).)

Diaz has made only "to improve himself." There is a more than an abstract possibility she would have connected these improvements to his older age and maturity, and his prior criminal behavior to his youth.

The prejudicial effect of counsel's failure to raise Diaz's youth was compounded by counsel's failure to argue that childhood trauma contributed to his crimes, citing Judge Rogers's comments at the initial sentencing. The People contend there was no prejudice because the court did consider, and rejected, the notion that Diaz's childhood trauma was a contributing factor to the commission of the offenses. There is, however, a reasonable probability that Judge Rodriguez would have been persuaded by the trial judge's impression that childhood trauma "undoubtedly" did contribute to Diaz's commission of the robberies had the argument been raised.

Counsel's combined errors undermine our confidence in the sentencing outcome. There is a reasonable probability that, considering Diaz's age and the Judge Rogers's prior statement, Judge Rodriguez would not have imposed the upper prison term on count one after weighing the aggravating and mitigating factors. Remand for resentencing based on the court's informed discretion is therefore required.

## DISPOSITION

Diaz's sentence is vacated. The matter is remanded to the trial court for a full resentencing hearing consistent with this opinion. Following resentencing, the court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.

17