Filed 6/17/25; Certified for Partial Pub. 7/16/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

<table>
<tr><td>THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND REYES,<br><br>    Defendant and Appellant.</td><td>2d Crim. No. B329858<br>(Super. Ct. No. 2022020343)<br>(Ventura County)</td></tr>
</table>

Raymond Reyes appeals his convictions by jury on one count of attempted murder (count 1; Pen. Code, §§ 664/187, subd. (a)),[1] one count of shooting at an inhabited dwelling (count 2; § 246), one count of possession of a firearm by a felon (count 3; § 29800, subd. (a)(1)), one count of possession of ammunition by a felon (count 4; § 30305, subd. (a)(1)), and one count of graffiti vandalism, raised to a felony (count 5; § 594, subd. (b)(2)(A), 186.22, subd. (d)). The jury found true allegations appellant

_____

[1] Unlabeled statutory cites are to the Penal Code.

committed counts 1, 2, and 5 for the benefit of a criminal street gang. (§ 186.22, subds. (b)(1)(C), (b)(4)(B), (d).) He received a determinate term of 29 years and four months in prison, plus an indeterminate term of 55 years to life.

Assembly Bill no. 333 (2021-2022 Reg. Sess.) (AB 333), requires bifurcating trial on gang enhancement allegations upon defendant's request. (§ 1109; Evid. Code, § 352.) The trial court granted appellant's request to bifurcate here. Appellant contends the court nevertheless committed reversible error because it admitted "unlimited, cumulative gang evidence" during the first phase of trial. He next contends the court erred by allowing an expert witness for the prosecution to identify appellant as the suspect who appeared in surveillance footage. Lastly, he contends the court should have granted his motion to dismiss the People's gang allegations under section 1118.1. We will affirm.

FACTS AND PROCEDURAL HISTORY

*The Shooting*

M.C. visited an Oxnard marijuana dispensary on August 28, 2021. He left the store and began walking to his friend's house. As he approached an intersection, a car approached from the right and stopped. The door opened. The driver emerged, yelled "Colonia," and fired a gun at him several times. M.C. immediately turned and ran in the opposite direction. One bullet struck his lower back. Another bullet struck an occupied home.

M.C. ran to his friend's house and collapsed. Paramedics took him to Ventura County Medical Center. Surgeons opened his chest and removed three liters of blood from his abdomen. His heart stopped beating on the operating table but restarted after surgeons manually massaged it. M.C. required five

2

surgeries and remained in the hospital for over a month. He lost sections of his liver, stomach, and small intestine.

*Arrest*

Police found four nine-millimeter bullet casings and one unspent round on the street. Two home security cameras captured video of the shooting. Another five cameras captured the shooter's car approaching and leaving the scene. A license plate search showed appellant was the registered owner. Police arrested him a month later during a traffic stop in Bakersfield. Corporal Jason Radcliffe of the Oxnard Police Department participated in the arrest. He questioned appellant for several hours then transported him to Ventura County.

*Post-Arrest Evidence*

Officers searched appellant's apartment and found an empty gun case for a Glock 43 nine-millimeter pistol, an extended magazine, and several rounds of ammunition. The apartment also contained Dallas Cowboys memorabilia, a "Colonia" hat, and clothing like that worn by the shooter in the videos.

Police detectives retrieved data from appellant's cell phone as well. It contained text messages between appellant's girlfriend and him about a recently murdered member of the Colonia Chiques street gang called "Lazy Eye." Messages between appellant and another individual named "Big Snoopy" showed they drove together from Bakersfield to Oxnard to attend a memorial car wash for Lazy Eye on August 28. Big Snoopy told appellant to "take your t"; appellant responded, "For sure." Appellant's Instagram account included other messages with Colonia gang members and showed he went by the moniker "Thief."

Cell tower data showed appellant's phone made an outgoing call in Bakersfield at 7:50 a.m. on the day of the shooting. It then made and received a series of calls between 12:10 p.m. and 4:06 p.m. near Oxnard's Del Sol Park—the site of Lazy Eye's car wash. The phone went off network between 5:00 p.m. and 7:18 p.m. Its activity between 7:38 p.m. and 9:59 p.m. showed it returning to Bakersfield along the 126 and I-5 freeways.

Appellant texted Big Snoopy four days later about tattooing "E" and "S" on his knees. Photos on his phone taken the next day showed these tattoos on his freshly-shaven knees. Big Snoopy sent a text message asking appellant to send "a picture of the toy," then adding, "Someone want[s] to buy it." Appellant responded, "Yeah, my boy. It's right here. Just let me know." The phone contained a photo of a Glock 43 pistol taken within four minutes of these messages. A nightstand similar to one in appellant's bedroom in Bakersfield appeared in the background. The phone also contained three screen shots of internet news stories relating to M.C.'s shooting.

*Pre-Trial Detention*

While appellant awaited trial, surveillance cameras at the Ventura County Pretrial Detention Center recorded him scrawling "COX3CH" and "Thief" on the wall of the recreation yard with a piece of roof tar. Staff identified the graffiti as typical of La Colonia Chiques, the jail's largest gang.

Appellant spoke to his girlfriend on a recorded jail phone while detained. During one call, he told her he was "involved in a shooting." He then backtracked by saying "they're accusing, they're accusing me of, of, of being involved in a shooting," and "I wasn't involved in nothing."

4

*Trial*

Appellant's trial took place in four phases over 14 days. The court granted his motion to bifurcate the gang allegations under amended section 1109. It denied his motion to exclude gang evidence from the guilt phase altogether, however, finding it relevant to motive and intent. (Evid. Code, § 1101, subd. (b).) It also denied his motion to sever the vandalism charge from trial on the four charges related to the shooting.

The jury found appellant guilty on all five charges in the first phase. It found true allegations that: he committed the offenses in counts 1, 2, and 5 for the benefit of a criminal street gang (phase two); he suffered a prior strike, a carjacking conviction, in 2011 (phase 3); and that several aggravating factors were present as to each offense (phase 4).[2]

## DISCUSSION

*Gang Evidence*

Appellant contends the court erred by admitting "unlimited, cumulative gang evidence" during the guilt phase of his trial. We conclude no error occurred.

---

[2] The jury found the following aggravating factors true in phase four of the trial: the crime involved great bodily harm, etc. (Cal. Rules of Court, rule 4.421(a)(1); count 1); appellant was armed with and used a weapon (*id.*, rule 4.421(a)(2); counts 1 and 2); the victim was particularly vulnerable (*id.*, rule 4.421(a)(3); count 2); the manner in which the crime was carried out indicates planning, sophistication, and professionalism (*id.*, rule 4.421(a)(8); counts 1 and 2); appellant engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1); all counts); and that appellant served a prior prison term (*id.*, rule 4.421(b)(3); all counts).

AB 333, titled the STEP Forward Act of 2021, revised the substantive and procedural requirements for imposing gang enhancements in California. The bill cited studies suggesting such evidence "may lead to wrongful convictions" when admitted during the guilt phase of trial and recognized bifurcating trial as a way to "help reduce its harmful and prejudicial impact." (Stats. 2021, ch. 699, § 2(e) & (f).) The bill codified a defendant's right to have gang enhancement charged under section 186.22 tried separately from guilt on the underlying offenses. (*Id.*, § 5.)[3]

The trial court granted appellant's request to try the gang enhancements separately but denied his motion to exclude all gang evidence because it was relevant "with respect to identity and motive." Appellant describes the People's evidence about gang culture and his affiliation with the Colonia Chiques as "incessant" and far beyond that required to prove his guilt. He argues AB 333's amendments require courts to more rigorously scrutinize gang evidence for prejudice, even if such evidence is relevant to proving a defendant's guilt on the underlying charges. Failing to perform this function rendered his trial fundamentally

---

[3] Section 1109, subd. (a) now reads: "If requested by the defense, a case in which a gang enhancement is charged under subdivision (b) or (d) of Section 186.22 shall be tried in separate phases as follows: [¶] (1) The question of the defendant's guilt of the underlying offense shall be first determined. [¶] (2) If the defendant is found guilty of the underlying offense . . . there shall be further proceedings to the trier of fact on the question of the truth of the enhancement. Allegations that the underlying offense was committed for the benefit of, at the direction of, or in association with, a criminal street gang and that the underlying offense was committed with the specific intent to promote, further, or assist in criminal conduct by gang members shall be proved by direct or circumstantial evidence."

unfair, he posits, and requires vacating his convictions on all counts under *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].

"California courts have long recognized the potentially prejudicial effect of gang membership." (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223.) Our Supreme Court has "condemned the introduction of evidence of gang membership if only tangentially relevant, given its highly inflammatory impact." (*People v. Cox* (1991) 53 Cal.3d 618, 660, overruled in part on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390; see *People v. Cardenas* (1982) 31 Cal.3d 897, 906 [prosecutor's "broad inquiries" about gang's purported criminal activities "made it a near certainty that the jury viewed appellant as more likely to have committed the violent offenses charged against him because of his membership"].) AB 333's amendments to section 1109 foreclose prosecutors from bootstrapping marginally relevant gang evidence into the guilt phase of trial under the pretext of proving one or more enhancements. It also heightened the standard of proof for proving such enhancements, whether adjudicated with or apart from the underlying offenses.

We do not agree with appellant, however, that AB 333 alters how trial courts must navigate the waters of relevance and prejudice under Evidence Code section 352. The bill codified the judiciary's longstanding concerns about gang evidence and modified existing statutes to allay these concerns. If the Legislature wanted to confine the trial court's discretion it could have done so. (See, e.g., *College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 717, italics omitted ["Except insofar as it increased the burden of proof applicable in all punitive damage trials, nothing in the 1987 Reform Act indicates that the

Legislature intended to change the substantive elements of punitive damage claims against health care providers . . . . The Legislature could have amended Civil Code section 3294 to reflect such changes in medical malpractice actions, but it did not do so."].)

"[E]vidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049; see *Tran, supra,* 13 Cal.5th at p. 1208 ["gang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime"].) Here, the trial court cautioned counsel that although it was allowing gang evidence to show motive and intent, "[t]hat doesn't mean it's, obviously, a full-blown gang testimony. I – there's clearly no need for predicate offenses and, you know . . . is this particular group a recognized criminal street gang or not. But I think in the context of what it was being offered for, it was appropriate."

Allowing significant evidence about appellant's gang affiliation was neither arbitrary, capricious, nor patently absurd. The motive and intent for M.C.'s shooting was crucial to the People's case against appellant. M.C. was walking alone to a friend's house when an unfamiliar car approached. A man stepped out of the car, shot him, and drove away. M.C. was not a gang member and was not walking in Colonia territory.

8

Appellant lived in Bakersfield and denied all material allegations against him.  The People were entitled to place this seemingly random act into context.  This included explaining why a shooter would yell "Colonia" at a stranger strolling through a neighborhood on a Sunday afternoon, then try to kill him.  This case involved more than a defendant charged with a crime who also happens to be a gang member.  (See *People v. Garcia* (2024) 107 Cal.App.5th 1040, 1050-1051 [court abused its discretion by allowing gang evidence where "no admissible evidence existed showing the crimes had any connection" to appellant's gang].)  This case involved a defendant alleged to have committed a crime *because* he was a gang member.

Moreover,  the court instructed the jury "not [to] conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."  (CALCRIM No. 1403.)  We presume the jury followed this instruction.  (*People v. Franklin* (2016) 248 Cal.App.4th 938, 953.)  Appellant has failed to show it is reasonably probable he would have obtained a more favorable result had the court admitted less gang evidence. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)[4]

*Corporal Radcliffe's Testimony on the Shooter's Identity*

Appellant contends the investigating officer's opinion testimony about the identity of the shooter invaded the province of the jury.  We again disagree.

Corporal Jason Radcliffe served as the primary investigating officer in appellant's case.  He testified at trial as the People's expert on the Colonia Chiques gang.  He also

[4] Having concluded the trial court properly admitted the gang evidence, we do not reach the issue of its decision not to sever the vandalism charge.

9

testified as a percipient witness about his investigation of the shooting and appellant's arrest in Bakersfield. He described questioning appellant for several hours after the arrest. The People asked whether he "form[ed] an opinion as to who the shooter was on the surveillance video." Corporal Radcliffe responded, "[o]ff the totality of the surveillance cameras and then holding out until I actually had physical contact and the conversation with Mr. Reyes, I believe 100 percent that was Mr. Reyes who conducted the shooting." He explained how the car appellant was driving at the time of his arrest appeared identical to the one in the video, including a small dent on the left rear quarter panel. The last three digits of the license plate matched as well. Appellant was wearing a blue tank top like the one worn by the shooter. Radcliffe concluded: "[T]hen actually getting to sit down, talk and see Mr. Reyes and deal with his – his appearance and mannerisms, I was absolutely confident that Mr. Reyes was the shooter."

Appellant argues Corporal Radcliffe usurped the function of the jury when he opined that appellant shot M.C. He compares Radcliffe's testimony to that of a similar "dual purpose" witness in *People v. Rouston* (2024) 99 Cal.App.5th 997 (*Rouston*). The witness in *Rouston*, like here, served as both primary investigator and gang expert. He testified defendant fired the shot that struck the victim. He based his opinion mostly on an eyewitness's account of the crime, as well as audio recordings of the shooting and forensic evidence about bullet trajectories. *Rouston* reversed, concluding the witness "provided improper opinions on [the defendant's] guilt." (*Id.* at p. 1011.) It stated: "The jury heard the other witness testimony and was equally competent 'to weigh the evidence and determine what the facts

10

were.'" (*Ibid.*, quoting *People v. Vang* (2011) 52 Cal.4th 1038, 1048.) "Given [his] status as a gang expert, the designated investigator who testified repeatedly throughout the trial, and a detective, 'the jury had every reason to look to [him] as a far better judge than they could be' regarding the reliability of other witnesses' testimony, and what inferences to draw from the prosecution's other evidence." (*Id.* at p. 1012, quoting *People v. Brown* (2016) 245 Cal.App.4th 140, 169.)

*Rouston* is distinguishable. Corporal Radcliffe did not base his opinion on the testimony of other witnesses, or claim special expertise in identifying people using video. He identified appellant as the shooting suspect only after participating in his arrest, questioning him, and comparing his "appearances and mannerisms" to those he observed in the video's footage prior to the arrest. The trial court properly allowed this testimony.

*Denial of Section 1118.1 Motion*

Section 186.22, subdivision (b)(1), provides a sentence enhancement of ten years for "a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." The jury found gang allegations "true" as to counts 1, 2 and 5 in the second phase of trial. The court denied appellant's motion for judgment of acquittal on the enhancements.

Appellant acknowledges the People introduced extensive evidence of his gang affiliation during the guilt phase of trial. He argues the People's failure to reintroduce this evidence in the second phase of trial—which focused instead on the predicate offenses committed by other members of the La Colonia Chiques—means the jury's true findings on the section 186.22

11

enhancements were not supported by sufficient evidence. We disagree.

Section 1109, subdivision (a) requires a gang enhancement to be tried separately from the underlying offense "[i]f requested by the defense." The statute does not expressly foreclose or limit the jury from considering evidence admitted during the guilt phase during a later phase of trial, such as a bifurcated proceeding on gang enhancements or aggravating factors. We decline to interpret the statute as creating evidentiary silos. This would compel the parties to perform the wasteful exercise of readmitting all relevant testimony and exhibits at each phase of trial. The plain language of section 1109 reflects the Legislature's intent to limit gang enhancement evidence during the guilt phase of trial—not the other way around. The uncodified language contained in AB 333 reflects this. (See Stats. 2021, ch. 699, § 2(d)(6) ["Gang enhancement evidence can be unreliable and prejudicial to a jury because it is lumped into evidence of the underlying charges which further perpetuates unfair prejudice in juries and convictions of innocent people"].)

During her phase two opening, the prosecutor told jurors "you'll be instructed at the end of this that you can use all of the evidence that you've already listened to throughout that first phase of the trial within this case." She invited jurors to consider first phase evidence throughout her closing statement as well. Appellant did not object or raise the issue in his motion for judgment of acquittal. The court instructed the jury to "impartially compare and consider all the evidence that was received during this phase of the trial." It then stated it had "misspoke[n]," and re-instructed them to "impartially compare and consider all the evidence that was received *during the trial*."

(Italics added.)  Again, appellant did not seek to correct this instruction.

Lastly, appellant contends the evidence is insufficient to support the "true" finding on the gang enhancement as to count two (shooting at an occupied dwelling), even if jurors properly considered evidence introduced in phase one.  He argues the People introduced no evidence he intended to benefit La Colonia Chiques by shooting the house.  We disagree.  Surveillance videos and testimony from several witnesses showed appellant stopped his car in the middle of a neighborhood, stepped out, yelled "Colonia," held his gun at waist height, and opened fire on M.C. against a backdrop of single-family homes.  Jurors could reasonably conclude from these facts that appellant had the required mental state when he fired the shot that struck an occupied dwelling.  (See *People v. Albillar* (2010) 51 Cal.4th 47, 59-60 ["In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence"].)

DISPOSITION

The judgment is affirmed.

CODY, J.

We concur:

GILBERT, P. J.          BALTODANO, J.

13

Anthony J. Sabo, Judge
Superior Court County of Ventura

_____

The Law Office of John Derrick, John Derrick, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Nicholas J. Webster, Amanda V. Lopez and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Filed 7/16/25

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B329858 |
| | (Super. Ct. No. 2022020343) |
| Plaintiff and Respondent, | (Ventura County) |
| v. | ORDER CERTIFYING |
| | OPINION FOR PARTIAL |
| RAYMOND REYES, | PUBLICATION |
| | (No Change in Judgment) |
| Defendant and Appellant. | |

THE COURT[*]:

The opinion in the above-entitled matter filed on June 17, 2025, was not certified for publication in the Official Reports. For [i]good cause, pursuant to California Rules of Court, rules 8.1105 and 8.1110, it now appears the opinion should be published in the Official Reports except the sections entitled *Gang Evidence* and *Corporal Radcliffe's Testimony on the Shooter's Identity* under the main heading titled DISCUSSION. It is so ordered.

There is no change in the Judgment.

CERTIFIED FOR PARTIAL PUBLICATION.

_____

GILBERT, P.J.        BALTODANO, J.        CODY, J.